**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JARED HOTARD** | **CIVIL ACTION** |
| **VERSUS** | **NO: 25-1634** |
| **PENNYMAC LOAN SERVICES, LLC** | **SECTION: "H"** |

## ORDER & REASONS

Before the Court is Defendant PennyMac Loan Services, LLC's Motion to Dismiss (Doc. 36). For the following reasons, the Motion is **GRANTED**.

## BACKGROUND

Plaintiff Jared Hotard brought this action in the 40th Judicial District Court for the Parish of St. John against his mortgage holder, Defendant Pennymac Loan Services, LLC. Plaintiff is the owner of property located at 3508 Main Street, LaPlace, Louisiana. Plaintiff alleges that his property sustained damage during Hurricane Ida and a subsequent fire, and Plaintiff filed a claim with his insurer. His insurer was later placed into receivership and the Louisiana Insurance Guaranty Association became responsible for Plaintiff's insurance claims. Plaintiff and the Louisiana Insurance Guaranty Association settled his claims, and Defendant, as mortgagee on the property, was included as an additional payee on the settlement checks. Plaintiff alleges

1

that Defendant refused to release the funds owed to Plaintiff to reimburse him for repairs to his home for three months. Plaintiff alleges that when Defendant ultimately released the funds, it failed to pay Plaintiff interest on those amounts as required by Louisiana Revised Statutes § 6:337. Plaintiff brings claims for monetary and injunctive relief for Defendant's violation of § 6:337. Plaintiff also asserts class action allegations.

Defendant has moved to dismiss Plaintiff's claims, arguing that he lacks standing and that § 6:337 does not provide a private right of action. Plaintiff opposes. The Court held oral argument on this Motion on May 7, 2026.

## **LEGAL STANDARD**

Defendant moves to dismiss Plaintiff's claim under both Federal Rule of Civil Procedure 12(b)(1) and (6). A Rule 12(b)(1) motion challenges the subject matter jurisdiction of a federal district court. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."[1] In ruling on a Rule 12(b)(1) motion to dismiss, the court may rely on (1) the complaint alone, presuming the allegations to be true, (2) the complaint supplemented by undisputed facts, or (3) the complaint supplemented by undisputed facts and by the court's resolution of disputed facts.[2] The proponent of federal court jurisdiction—in this case, the Plaintiff—bears the burden of establishing subject matter jurisdiction.[3]

---

[1] Home Builders Ass'n of Miss., Inc. v. City of Madison, 143 F.3d 1006, 1010 (5th Cir. 1998).

[2] Den Norske Stats Oljesels kap As v. Heere MacVof, 241 F.3d 420, 424 (5th Cir. 2001).

[3] *See* Physicians Hosps. of Am. v. Sebelius, 691 F.3d 649, 652 (5th Cir. 2012).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim for relief that is plausible on its face."[4] A claim is "plausible on its face" when the pleaded facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[5] A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."[6] The court need not, however, accept as true legal conclusions couched as factual allegations.[7] To be legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true.[8] If it is apparent from the face of the complaint that an insurmountable bar to relief exists and the plaintiff is not entitled to relief, the court must dismiss the claim.[9] The court's review is limited to the complaint and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.[10]

## LAW AND ANALYSIS

Defendant moves to dismiss Plaintiff's claim that Defendant failed to pay him interest on insurance settlement proceeds in compliance with Louisiana Revised Statutes § 6:337 for two reasons: (1) Plaintiff lacks standing, and (2) §

---

[4] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)).

[5] *Id.*

[6] Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232 (5th Cir. 2009).

[7] *Iqbal*, 556 U.S. at 678.

[8] *Id.*

[9] *Lormand*, 565 F.3d at 255–57.

[10] Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000).

6:337 does not provide a private right of action. This Court will consider each argument in turn.

### A. Standing

Defendant argues that Plaintiff does not have Article III standing to bring his claims for either monetary or injunctive relief. Defendant argues that Plaintiff lacks standing to bring a monetary claim because he did receive interest, and he lacks standing to bring a claim for injunctive relief because there is no threat of future injury. Defendant asks this Court to dismiss Plaintiff's case for lack of subject matter jurisdiction.

"It is well settled that unless a plaintiff has standing, a federal district court lacks subject matter jurisdiction to address the merits of the case."[11] "Courts may dismiss for lack of subject matter jurisdiction on any one of three different bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[12] "A motion to dismiss for lack of standing may be either facial or factual."[13] Where, as here, the Defendant has made a factual attack challenging the existence of subject matter jurisdiction, irrespective of the pleadings, "matters outside the pleadings, such as testimony and affidavits are considered."[14]

---

[11] Matte v. Sunshine Mobile Homes, Inc., 270 F. Supp. 2d 805, 813 (W.D. La. 2003).

[12] Clark v. Tarrant Cnty., 798 F.2d 736, 741 (5th Cir. 1986).

[13] Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc., 778 F.3d 502, 504 (5th Cir. 2015).

[14] Norwood v. United Med. Recovery, LLC, No. 4:21-CV-134-DMB-JMV, 2022 WL 4088081, at *1 (N.D. Miss. Sept. 6, 2022).

### a. Monetary Relief

Defendant argues that Plaintiff has no Article III standing to bring a monetary claim for relief because he received interest on the insurance settlement proceeds at issue. Standing under Article III requires a plaintiff to "demonstrate a 'personal stake' in the suit."[15] To establish such a personal stake for purposes of Article III, a plaintiff must show three elements: (1) an "injury in fact" that is "concrete and particularized" and "actual or imminent"; (2) a "causal connection between the injury and the conduct complained of"; and (3) a likelihood, as opposed to mere speculation, that a favorable decision will redress the injury.[16] "When considering whether a plaintiff has Article III standing, a federal court must assume *arguendo* the merits of his or her legal claim."[17]

Defendant argues that Plaintiff has not established an injury in fact. In support, Defendant points to a check for $2.05 in interest sent to Plaintiff on July 5, 2025. Defendant argues that Plaintiff has no standing to assert a claim for nonpayment of interest because he received the $2.05 interest payment. In response, Plaintiff does not contest that the $2.05 check was a payment of interest. Rather, he argues that $2.05 is far less than the interest he is owed and is based on a .01% interest rate, which is not in compliance with Louisiana Revised Statutes § 6:337. Defendant correctly points out, however, that Plaintiff's Complaint states only that he did not receive interest, not that the

---

[15] Camreta v. Greene, 563 U.S. 692, 701 (2011) (quoting Summers v. Earth Island Institute, 555 U.S. 488, 493 (2009)).

[16] Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992) (internal quotations omitted).

[17] N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare, 781 F.3d 182, 191 (5th Cir. 2015) (quoting Cole v. Gen. Motors Corp., 484 F.3d 717, 723 (5th Cir. 2007)) (citation modified).

interest amount paid was insufficient. Therefore, Defendant is correct that Plaintiff's Complaint does not establish standing for monetary relief, and dismissal for lack of subject matter jurisdiction is appropriate.[18]

Plaintiff's pleading deficiency, however, is easily remedied by an amendment to his Complaint. If Plaintiff alleges the interest payment was insufficient, he will have stated an injury in fact. Rule 15 requires that leave to amend be freely given when justice so requires. Accordingly, Plaintiff may amend his Complaint in order to properly allege standing.

### b. Injunctive Relief

As to the injunctive relief requested by Plaintiff—an order preventing Defendant from failing to pay interest on insurance settlement proceeds— Defendant argues that Plaintiff does not have standing for the injunctive relief requested because he paid off his mortgage in August 2025, and therefore there is no risk of future harm. Indeed, when a plaintiff seeks injunctive relief, he must show "a real and immediate threat of future or continuing injury apart from any past injury."[19]

Plaintiff does not directly address this argument. Instead, he argues that even assuming that he does not personally have standing for injunctive

---

[18] Plaintiff also argues that the voluntary cessation doctrine prevents Defendant from arguing that the case is moot because the $2.05 interest payment was made after Plaintiff filed his lawsuit. "The doctrine of voluntary cessation evaluates the risk that a defendant is engaging in 'litigation posturing' to avoid judicial review. Accordingly, it must be 'absolutely clear' that the defendant's challenged conduct 'could not reasonably be expected to recur' to divest" the court of jurisdiction. U.S. Navy SEALs 1-26 v. Biden, 72 F.4th 666, 673 (5th Cir. 2023) (internal quotations omitted). As discussed in the next section, Defendant's conduct cannot be expected to recur, and therefore the doctrine of voluntary cessation does not apply to prevent dismissal for lack of standing.

[19] Aransas Project v. Shaw, 775 F.3d 641, 648 (5th Cir. 2014) (citing *In re* Stewart, 647 F.3d 553, 557 (5th Cir. 2011)).

relief, the other class members do. He argues that courts sometimes recognize standing to seek relief on behalf of class members even where the named plaintiff's claim is moot. The cases Plaintiff cites in support of this proposition, however, are easily distinguishable because they involve cases in which a class is already certified or a class certification motion is pending.[20] In *Zeidman v. J. Ray McDermott & Co.*, for example, the question before the court was whether "a purported but uncertified class action" should be "dismissed for mootness upon tender to the named plaintiffs of their personal claims, despite the existence of a timely filed and diligently pursued pending motion for class certification."[21] In considering this question, the Fifth Circuit acknowledged that the general principle is "that a purported class action becomes moot when the personal claims of all named plaintiffs are satisfied and no class has properly been certified. In such a case there is no plaintiff (either named or unnamed) who can assert a justiciable claim against any defendant and consequently there is no longer a 'case or controversy' within the meaning of Article III of the Constitution."[22] Accordingly, because a class has not been certified, Plaintiff cannot rely on the claims of future possible class members to establish standing for injunctive relief. Further, because he has paid off the

---

[20] *See* Sosna v. Iowa, 419 U.S. 393, 399 (1975) ("If appellant had sued only on her own behalf, both the fact that she now satisfies the one-year residency requirement and the fact that she has obtained a divorce elsewhere would make this case moot and require dismissal. But appellant brought this suit as a class action and sought to litigate the constitutionality of the durational residency requirement in a representative capacity. When the District Court certified the propriety of the class action, the class of unnamed persons described in the certification acquired a legal status separate from the interest asserted by appellant. We are of the view that this factor significantly affects the mootness determination.").

[21] 651 F.2d 1030, 1041 (5th Cir. 1981).

[22] *Id.*

mortgage at issue, he cannot show a "real and immediate threat of future or continuing injury apart from any past injury."[23]  Plaintiff therefore does not have standing for the injunctive relief requested. Dismissal for lack of subject matter jurisdiction is appropriate here as well. No leave to amend is granted as amendment would be futile.[24]

## B. Private Right of Action

Although the Court has already determined that dismissal for lack of subject matter jurisdiction of Plaintiff's claims for both monetary and injunctive relief is appropriate, the Court has also stated its intention to allow Plaintiff to amend his Complaint to allege standing as to his claim for monetary relief. Accordingly, the Court will consider Defendant's final argument for dismissal as well.

Defendant argues that Plaintiff's claim should be dismissed because Louisiana Revised Statutes § 6:337 does not create a private right of action. Section 6:337 outlines certain duties of mortgagees and servicers vis-à-vis insurance settlement proceeds on residential properties, including that the proceeds should be deposited into a segregated account, that they should be promptly distributed under certain circumstances, and that they should accrue interest.[25] Section 6:337 also provides that the insurance commissioner can

---

[23] *Aransas Project*, 775 F.3d at 648.

[24] When denying a motion to amend, the court must have a "substantial reason" considering such factors as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . and futility of the amendment." Marucci Sports, LLC v. Nat'l Collegiate Athletic Ass'n, 751 F.3d 368, 378 (5th Cir. 2014) (citation modified). An amendment is deemed to be futile if it would be dismissed under a Rule 12(b)(6) motion. Id.

[25] LA. REV. STAT. § 6:337.

impose penalties for the violation of these duties.[26] The statute is silent as to any right of the borrower to bring a claim for violation of the duties established therein. Defendant argues therefore that it does not provide a private right of action and that if the legislature intended to create a private right of action, it would have done so.

In response, Plaintiff relies on *Anderson v. Ochsner Health* in which the Louisiana Supreme Court considered whether there was a private right of action under the Balance Billing Act.[27] There too, the statute was silent on the existence of a private right of action, so the Court looked to legislative intent.[28] The Balance Billing Act expressly provides that an insured who has been billed in violation of the Act can file a complaint with the attorney general and instructs that the attorney general "may pursue remedies."[29] The defendant argued that the inclusion in the Balance Billing Act of an administrative remedy precluded a private right of action.[30] The Louisiana Supreme Court disagreed.[31] The Court found "an implied private right of action exists under La. R.S. 22:1871, et seq. based on (1) the legislature's failure to expressly prohibit an individual remedy; (2) the legislative intent to protect consumers; and (3) the constitutional right of access to the courts in order to seek personal relief."[32] The Court found that "the legislature enacted this statutory scheme

---

[26] *Id.* § 6:337(c)(4) ("The commissioner may impose civil money penalties of up to five hundred dollars per day for each day that a mortgagee or mortgage servicer fails to comply with the requirements of Paragraph (1) or (2) of this Subsection.").

[27] 172 So. 3d 579 (La. 2014).

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Id.* at 586.

with protection of the consumer in mind. Accordingly, it is difficult to envision a law denying recourse to individuals when that law's principle aim is individual protection."[33] It held that the power granted to the attorney general in the Act is discretionary and therefore "further evidences the existence of an implied private right of action."[34] It noted that "[a] person's individual right to seek recourse for an alleged wrong should not depend on a governmental body's decision to pursue the offender."[35]

Plaintiff argues that this Court should reach the same result as in *Anderson*. Here too, § 6:337 does not expressly prohibit a private right of action, was enacted for the protection of residential borrowers whose insurance settlements are sent to their mortgage servicers, and the power granted to the insurance commissioner to impose penalties is permissive. Section 6:337 provides only that the commissioner "*may* impose civil money penalties of up to five hundred dollars per day for each day that a mortgagee or mortgage servicer fails to comply with the requirements" of the statute. This Court agrees that the analysis in *Anderson* is squarely on point with the question presented here.

Defendant attempts to distinguish *Anderson* by pointing out that the Balance Billing Act expressly incorporates the Louisiana Unfair Trade Practices Act ("LUTPA") as an enforcement mechanism. But this misconstrues the *Anderson* Court's opinion and the Act itself. LUTPA is incorporated into the Balance Billing Act with respect to the attorney general's enforcement

---

[33] *Id.* at 584.
[34] *Id.*
[35] *Id.*

rights.[36] The Louisiana Supreme Court simply observed that the Act's incorporation of LUTPA suggested the legislature's intent to expose violators to more liability, not less.[37] The Court does not base its finding of a private right of action on the Balance Billing Act's incorporation of LUTPA. That said, Defendant has failed to meaningfully distinguish the Louisiana Supreme Court's decision in *Anderson*.

For its part, Defendant relies on cases from this Court that found no private right of action in the Louisiana Motor Vehicles Act ("LMVA"). For example, in *Crescent City M Dealership, L.L.C. v. Mazda Motor of America, Inc.,* a section of this Court stated that "the grant of such broad regulatory and enforcement powers to a state agency [in the LMVA] forecloses a private right of action, absent language expressly granting one."[38] However, this case is easily distinguishable where the LMVA provides a much more robust enforcement scheme than is present here and the enforcement powers granted by it to the state agency are not discretionary.[39] Indeed, a court in the Western

---

[36] LA. REV. STAT. § 22:1877(A)(6) ("In the event that a contracted health care provider fails to comply with a notice of unfair trade practices, the attorney general may proceed in accordance with the Unfair Trade Practices and Consumer Protection Law, R.S. 51:1401 et seq.").

[37] *Anderson*, 172 So. 3d at 584 ("The Balance Billing Act's reference to and incorporation of these Unfair Trade Practices and Consumer Protection provisions serve to illustrate the legislature's intention of exposing violators to more liability, not less.").

[38] Crescent City M Dealership, L.L.C. v. Mazda Motor of Am., Inc., No. CIV. A. 00-1620, 2000 WL 1372965, at *2 (E.D. La. Sept. 22, 2000), *aff'd*, 275 F.3d 43 (5th Cir. 2001).

[39] "The LMVA empowers only the LMVC to enforce the provisions of the Act. The Commission has the power to grant, deny, and revoke licenses for motor vehicle dealerships, to hold hearings, subpoena witnesses, impose civil penalties for violations of the Act, and order renewal or reinstatement of a dealer's franchise that a manufacturer has canceled without just cause. The Act also empowers the Commission to institute an injunctive action to enforce its provisions, and to enter cease and desist orders prohibiting conduct in violation of the Act. Thus, the LMVA constitutes a comprehensive regulatory scheme that confers upon

11

District of Louisiana made the same distinction between *Anderson* and *Crescent City*, stating that unlike the Balance Billing Act, "the LMVA creates a comprehensive regulatory scheme and an administrative complaint process that can be invoked by an aggrieved dealer."[40] Likewise, Defendant cites to *Stokes v. Southwest Airlines*, in which the Fifth Circuit held that the Air Carrier Access Act did not provide a private right of action where it created a mandatory "*comprehensive administrative scheme* designed to vindicate fully the rights of disabled persons."[41] The cases cited by Defendant, in addition to being non-binding, involve robust and comprehensive administrative remedies unlike the permissive enforcement powers granted by the Balance Billing Act in *Anderson* or § 6:337 at issue here. This Court finds these cases easily distinguishable,

This Court finds that in reliance on *Anderson*, § 6:337 creates a private right of action based on "(1) the legislature's failure to expressly prohibit an individual remedy; (2) the legislative intent to protect consumers; and (3) the constitutional right of access to the courts in order to seek personal relief."[42] The Court finds compelling the fact that the remedy created by § 6:337 provides

---

the Commission the power and authority to implement its purpose." *Id.*; LA. REV. STAT. § 32:1259 ("If it appears to the commission at any time that a person is violating the provisions of this Chapter or any rule or order of the commission issued pursuant to this Chapter, it *shall* notify the person engaged in such conduct to appear and show cause why a cease and desist order should not be issued prohibiting the proscribed conduct.").

[40] Navarre Chevrolet, Inc. v. Hyundai Motor Am. Corp., No. 2:18-CV-0327, 2019 WL 2166679, at *3 (W.D. La. Feb. 4, 2019).

[41] 887 F.3d 199, 202–03 (5th Cir. 2018). ("If, after an investigation and hearing, the DOT finds an ACAA violation, it *must* issue an order compelling compliance, *id.* § 46101(a)(4), and may further revoke the airline's air carrier certificate, *id.* § 41110(a)(2)(B), or impose civil penalties of up to $25,000 for each act of discrimination.").

[42] *Anderson*, 172 So. 3d at 586.

no recourse to a borrower whose mortgage servicer violates its provisions. The statute provides only for a penalty to be imposed by the insurance commissioner.[43] There is no process outlined for an aggrieved borrower to complain to the insurance commissioner, and there is no indication that any amount of the penalty will be distributed to the borrower to make him whole. Just as in *Anderson*, the commissioner is "seeking to obtain relief that will not directly benefit the plaintiff."[44] Further, the commissioner is under no obligation to impose a penalty for violations of § 6:337. "A person's individual right to seek recourse for an alleged wrong should not depend on a governmental body's decision to pursue the offender."[45] Finally, the text of the statute makes clear that it was enacted "with protection of the consumer in mind."[46] The statute imposes duties on mortgagees or mortgage servicers servicing residential mortgage loans relative to the disbursement of insurance proceeds and seeks:

> to provide for prompt endorsement; to require prompt payment to borrower-payees in certain circumstances; to require placement of settlement proceeds in a segregated account; to provide for requirements for a residential mortgagee or mortgage servicer; to provide for the payment of proceeds relative to additional living expenses and contents insurance; to provide for notice by a mortgagee or mortgage servicer in certain circumstances; to provide for the release of proceeds held by a mortgagee or mortgage servicer; to provide for civil money penalties; to provide for the payment of interest accrued on settlement proceeds; to provide for

---

[43] LA. REV. STAT. § 6:337(c)(4) ("The commissioner may impose civil money penalties of up to five hundred dollars per day for each day that a mortgagee or mortgage servicer fails to comply with the requirements of Paragraph (1) or (2) of this Subsection.").

[44] *Anderson*, 172 So. 3d at 584.

[45] *Id.*

[46] *Id.*

13

release of excess funds upon written request; to provide for applicability; and to provide for related matters.[47]

This Court therefore finds that § 6:337 creates "an implied right of action based on the legislative purpose and the spirit of the law."[48]

## **CONCLUSION**

For the foregoing reasons, the Motion to Dismiss is **GRANTED** for lack of subject matter jurisdiction. **IT IS FURTHER ORDERED** that Plaintiff may amend his Complaint within 20 days of this Order to the extent that he can allege standing. Failure to amend will result in dismissal.

New Orleans, Louisiana this 18th day of May, 2026.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[47] Louisiana House Journal, 2022 Reg. Sess. No. 44 (House Bill No. 1064).
[48] *Id.* at 585.