**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JARED HOTARD** | **CIVIL ACTION** |
| **VERSUS** | **NO: 25-1634** |
| **PENNYMAC LOAN SERVICES, LLC** | **SECTION: "H"** |

## ORDER & REASONS

Before the Court is Defendant PennyMac Loan Services, LLC's Second Motion to Dismiss (Doc. 54). For the following reasons, the Motion is **GRANTED**.

## BACKGROUND

Plaintiff Jared Hotard brought this action in the 40th Judicial District Court for the Parish of St. John against his mortgage holder, Defendant Pennymac Loan Services, LLC. Plaintiff is the owner of property located at 3508 Main Street, LaPlace, Louisiana. Plaintiff alleges that his property sustained damage during Hurricane Ida and a subsequent fire, and Plaintiff filed a claim with his insurer. His insurer was later placed into receivership and the Louisiana Insurance Guaranty Association became responsible for Plaintiff's insurance claims. Plaintiff and the Louisiana Insurance Guaranty Association settled his claims, and Defendant, as mortgagee on the property, was included as an additional payee on the settlement checks. Plaintiff alleges

that Defendant refused for three months to release the funds owed to Plaintiff to reimburse him for repairs to his home. Plaintiff alleges that when Defendant ultimately released the funds, it failed to pay Plaintiff interest on those amounts as required by Louisiana Revised Statutes § 6:337. Plaintiff brought claims for monetary and injunctive relief for Defendant's violation of § 6:337. Plaintiff also asserted class action allegations. Defendant removed this matter to this Court on diversity grounds.

On March 6, 2026, Defendant moved to dismiss Plaintiff's claims, arguing that he lacked standing and that § 6:337 does not provide a private right of action. The Court granted Defendant's Motion, agreeing that Plaintiff had not alleged standing for monetary or injunctive relief but holding that § 6:337 does provide a private right of action. The Court allowed Plaintiff to amend his Complaint as to his claim for monetary relief.

Plaintiff filed a Second Amended Complaint on June 1, 2026, setting forth a claim for monetary relief for Defendant's failure to pay sufficient interest on the settlement funds it held and reasserting class action allegations. Defendant moves for dismissal of this claim, again arguing that Plaintiff lacks standing. Defendant also asks this Court to reconsider its holding that § 6:337 provides a private right of action. Plaintiff opposes.

## LEGAL STANDARD

### A. Motion for Reconsideration

A Motion for Reconsideration of an interlocutory order is governed by Federal Rule of Civil Procedure 54(b), which states that: "[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the

rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." "Under Rule 54(b), 'the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'"[1] "'[T]he power to reconsider or modify interlocutory rulings is committed to the discretion of the district court, and that discretion is not cabined by the heightened standards for reconsideration' governing final orders.'"[2]

**B. Motion to Dismiss**

A Rule 12(b)(1) motion challenges the subject matter jurisdiction of a federal district court. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."[3] In ruling on a Rule 12(b)(1) motion to dismiss, the court may rely on (1) the complaint alone, presuming the allegations to be true, (2) the complaint supplemented by undisputed facts, or (3) the complaint supplemented by undisputed facts and by the court's resolution of disputed facts.[4] The proponent of federal court jurisdiction—in this case, the Plaintiff—bears the burden of establishing subject matter jurisdiction.[5]

---

[1] Austin v. Kroger Texas, L.P., No. 16-10502, 2017 WL 1379453, at *9 (5th Cir. 2017) (quoting Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 185 (5th Cir. 1990)).

[2] *Id.* (quoting Saint Annes Dev. Co. v. Trabich, 443 Fed.Appx. 829, 831–32 (4th Cir. 2011).

[3] Home Builders Ass'n of Miss., Inc. v. City of Madison, 143 F.3d 1006, 1010 (5th Cir. 1998).

[4] Den Norske Stats Oljesels kap As v. Heere MacVof, 241 F.3d 420, 424 (5th Cir. 2001).

[5] *See* Physicians Hosps. of Am. v. Sebelius, 691 F.3d 649, 652 (5th Cir. 2012).

## LAW AND ANALYSIS

Defendant moves to dismiss Plaintiff's claim that Defendant failed to pay him interest on insurance settlement proceeds in compliance with Louisiana Revised Statutes § 6:337. Defendant first asks this Court to reconsider its holding that § 6:337 creates a private right of action. Second, Defendant argues that Plaintiff lacks standing to bring this claim because he received an interest payment. This Court will consider each argument in turn.

### A. Motion for Reconsideration

Defendant asks this Court to reconsider its holding that § 6:337 creates a private right of action. In so arguing, it points to two Louisiana appellate court decisions that found statutes did not create private rights of action even where there was no administrative remedy available.[6] These appellate court decisions, however, do nothing to undercut the Court's reliance on the Louisiana Supreme Court's later decision in *Anderson v. Ochsner Health System*.[7] As to this Court's reliance on *Anderson*, Defendant simply rehashes arguments already considered and rejected. Accordingly, this Court declines to reconsider its decision.

### B. Motion to Dismiss for Lack of Standing

Defendant next argues that Plaintiff does not have Article III standing to bring his claims for monetary relief and asks this Court to dismiss Plaintiff's claims for lack of subject matter jurisdiction. Defendant argues that Plaintiff lacks standing to bring a monetary claim because he did receive interest.

---

[6] *See* Monier v. St. Charles Par. Sch. Bd., 65 So. 3d 731, 732 (La. App. 5 Cir. 2011); Cook v. Hibernia Nat. Bank, 816 So. 2d 901, 903 (La. App. 4 Cir. 2002).

[7] Anderson v. Ochsner Health Sys., 172 So. 3d 579 (La. 2014).

"It is well settled that unless a plaintiff has standing, a federal district court lacks subject matter jurisdiction to address the merits of the case."[8] "Courts may dismiss for lack of subject matter jurisdiction on any one of three different bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[9] "A motion to dismiss for lack of standing may be either facial or factual."[10] Where, as here, the Defendant has made a factual attack challenging the existence of subject matter jurisdiction, irrespective of the pleadings, "matters outside the pleadings, such as testimony and affidavits are considered."[11]

Defendant argues that Plaintiff has no Article III standing to bring a monetary claim for relief because he received interest on the insurance settlement proceeds at issue. Standing under Article III requires a plaintiff to "demonstrate a 'personal stake' in the suit."[12] To establish such a personal stake for purposes of Article III, a plaintiff must show three elements: (1) an "injury in fact" that is "concrete and particularized" and "actual or imminent"; (2) a "causal connection between the injury and the conduct complained of"; and (3) a likelihood, as opposed to mere speculation, that a favorable decision will redress the injury.[13] "When considering whether a plaintiff has Article III

[8] Matte v. Sunshine Mobile Homes, Inc., 270 F. Supp. 2d 805, 813 (W.D. La. 2003).

[9] Clark v. Tarrant Cnty., 798 F.2d 736, 741 (5th Cir. 1986).

[10] Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc., 778 F.3d 502, 504 (5th Cir. 2015).

[11] Norwood v. United Med. Recovery, LLC, No. 4:21-CV-134-DMB-JMV, 2022 WL 4088081, at *1 (N.D. Miss. Sept. 6, 2022).

[12] Camreta v. Greene, 563 U.S. 692, 701 (2011) (quoting Summers v. Earth Island Institute, 555 U.S. 488, 493 (2009)).

[13] Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992) (internal quotations omitted).

standing, a federal court must assume *arguendo* the merits of his or her legal claim."[14]

Defendant argues that Plaintiff has not established an injury in fact. In support, Defendant points to a check for $2.05 in interest sent to Plaintiff on July 5, 2025. The $2.05 in interest was the result of a 0.01 percent interest rate paid on the account that held the settlement proceeds at issue. Defendant argues that Plaintiff has no standing to assert a claim for nonpayment of interest because he received the $2.05 interest payment. Plaintiff argues that the amount tendered in interest by Defendant is insufficient to satisfy its obligation under § 6:337.

Section 6:337 provides in relevant part that:

> Interest shall accrue on insurance settlement proceeds where the funds equal twenty-five thousand dollars or more after being held by the mortgagee or mortgage servicer in a segregated account for more than thirty days. For the purposes of this Subsection, compliance with Fannie Mae or Freddie Mac servicing guidelines for payment of interest on property damage claim funds held by the mortgagee or mortgage servicer constitutes compliance with this Section.

Defendant argues that its placement of Plaintiff's funds in an account that paid 0.01 percent interest and its tender of $2.05 in interest to Plaintiff satisfies the requirements of § 6:337. Plaintiff, on the other hand, argues that § 6:337 requires legal interest be paid, and therefore 0.01 percent interest is insufficient and he is owed additional interest.

---

[14] N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare, 781 F.3d 182, 191 (5th Cir. 2015) (quoting Cole v. Gen. Motors Corp., 484 F.3d 717, 723 (5th Cir. 2007)) (citation modified).

In order to resolve this issue, the Court must determine what interest is required under § 6:337. In interpreting Louisiana law, courts "should first look to final decisions of the Louisiana Supreme Court."[15] To the extent the supreme court has not resolved an issue, the Court must "make an *Erie* guess and determine . . . what the Louisiana Supreme Court would decide."[16] Here, neither the Louisiana Supreme Court nor any other court has weighed in on the issue. Accordingly, the Court will make an *Erie* guess on this issue of first impression.

Under Louisiana's rules for statutory interpretation, "[w]hen a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature."[17] The Court finds that § 6:337 unambiguously requires "interest" without reference to any particular rate. Although the term is not defined in the statute, "words of a law must be given their generally prevailing meaning,"[18] and "interest" is generally defined as "money paid for the use of money."[19] Plaintiff would have this Court interpret the term "interest" to mean "legal interest." "Legal interest" is interest that is fixed by statute at a certain rate.[20] However, this Court finds no basis to read a word into the statute that simply is not there. The Louisiana legislature regularly uses the term "legal interest" when it intends to identify

---

[15] Guerrera v. United Fin. Cas. Co., 161 F.4th 913, 916 (5th Cir. 2025).
[16] *Id.*
[17] LA. CIV. CODE art. 9.
[18] LA. CIV. CODE art. 11.
[19] Sec'y, Dep't of Revenue v. Calcasieu Ref. Co., 809 So. 2d 1023, 1029 (La. App. 1 Cir. 2001) (quoting Webster's New World Dictionary (3d Col. Ed.1988)).
[20] LA. REV. STAT. § 9:3500.

the rate of interest.[21] On the other hand, the legislature regularly uses the term "interest" in statutes in which it would be nonsensical to assume the phrase means "legal interest."[22] Accordingly, the Court holds that pursuant to its plain language, § 6:337 does not identify a rate at which interest must be paid on settlement proceeds, and therefore any amount of interest satisfies its requirements.

Plaintiff argues that this interpretation leads to absurd results because if *any* interest rate satisfies the requirements of § 6:337 then there would be no reason to provide a safe harbor provision allowing compliance with Freddie Mac and Fannie Mae guidelines to satisfy § 6:337. But "in statutory interpretation, an absurdity is not mere oddity. The absurdity bar is high, as it should be. The result must be preposterous, one that 'no reasonable person could intend.'"[23] According to the parties, Fannie Mae's guidelines require interest equivalent to the interest a borrower would receive from a savings or money market account, while Freddie Mac does not require a particular amount of interest, requiring only that funds retained pending disbursement for repairs be maintained in a federally insured account that pays interest to the borrower. Accordingly, the Fannie Mae and Freddie Mac guidelines have interest requirements that are more than or equal to the requirements of

---

[21] *See* LA. CIV. CODE art. 2000 ("When the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due, at the rate agreed by the parties or, in the absence of agreement, at the rate of legal interest as fixed by R.S. 9:3500.").

[22] *See* LA. REV. STAT. § 6:1263 ("The board of directors shall determine the rate and amount of *interest* to be paid on withdrawable accounts and for that purpose may establish reasonable classifications of withdrawable accounts." (emphasis added)).

[23] Texas Brine Co., L.L.C. v. Am. Arb. Ass'n, Inc., 955 F.3d 482, 486 (5th Cir. 2020).

§ 6:337. There is nothing preposterous about this result. Accordingly, because the statute is unambiguous and does not lead to absurd results, the Court finds that § 6:337 does not require a certain rate of interest to be paid. Defendant's $2.05 interest check therefore satisfies its requirements, and Plaintiff does not have an injury in fact to maintain standing for his claim.

It is well settled in Louisiana law that "[w]hen a law is clear and unambiguous and its application does not lead to absurd consequences, it shall be applied as written and no further interpretation may be made in search of legislative intent."[24] That said, were this Court to consider the intent of § 6:337 it would find the result it reaches here to be inequitable. Under the plain language of § 6:337, a servicer could satisfy its requirements by paying $1.00 in interest on a $1 million dollar settlement fund that it held for months. Assuming the intent of § 6:337 is to encourage servicers to release settlement funds to allow homeowners to complete repairs, this law misses the mark where it fails to provide any floor on an acceptable rate of interest. This Court is, however, bound by its clear terms.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss is **GRANTED**, and this matter is **DISMISSED WITH PREJUDICE.**

---

[24] In re Succession of Boyter, 756 So. 2d 1122, 1128–29 (La. 2000).

New Orleans, Louisiana this 28th day of October, 2026.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**